# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00239-CV

### In re Charles Norris

## ORIGINAL PROCEEDING FROM WILLIAMSON COUNTY

## O P I N I O N

This is an original proceeding brought incident to a pending appeal that presents issues concerning the scope of a family code provision that grants to trial courts the authority to issue temporary orders pending the appeal of a case involving conservatorship of a child. *See* Tex. Fam. Code Ann. § 109.001 (West 2008). Relator Charles Norris seeks a writ of mandamus to set aside a district court order that he pay real party in interest Melissa Norris's attorney's fees in the pending appeal. Based on the reasons set forth below, we will conditionally grant the writ.

## BACKGROUND

Charles Norris and Melissa Norris divorced in 2006.[1] There was one minor child of the marriage, and the divorce decree appointed Charles and Melissa joint managing conservators,

---

[1] We take the facts stated here from the parties' briefs and appendices as well as from the appellate record filed in the pending appeal of the underlying case, *Charles Norris v. Melissa Norris*, Appellate Cause No. 03-12-00108-CV, of which we take judicial notice here. *See Texas Real Estate Comm'n v. Nagle*, 767 S.W.2d 691, 694 (Tex. 1989); *In re Riley*, 339 S.W.3d 216, 221 n.5 (Tex. App.—Waco 2011, orig. proceeding).

but no party was ordered to pay child support.[2] Melissa filed the underlying suit seeking an order from the district court requiring Charles to pay child support. After a full trial on the merits, the district court signed a final order modifying the parent-child relationship on December 14, 2012, ordering Charles to pay child support in the amount of $885 per month. Charles filed a motion for new trial on January 13, 2012, and on February 17, 2012, Charles perfected his appeal to this Court by filing a notice of appeal with the district clerk.

On March 6, 2012, Melissa filed a motion for temporary orders pending appeal, seeking payment of her appellate attorney's fees on the grounds that they were necessary to preserve and protect the safety and welfare of the child. On March 20, 2012, thirty-one days after Charles perfected his appeal to this Court, the district court conducted a hearing on Melissa's motion for temporary orders and orally ruled that he would grant the motion. On March 29, the district court signed a written order granting Melissa's motion and ordering Charles to pay Melissa $8,100 in appellate attorney's fees by May 4, 2012. Charles then filed this original proceeding and, pursuant to his request for temporary relief, we issued an order on May 2, 2012, staying the district court's March 29 order until further notice.

## STANDARD OF REVIEW

We may issue a writ of mandamus when a trial court clearly abuses its discretion and there is no adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004). A trial court "abuses its discretion" if it issues an order that exceeds its

---

[2] Given the parties' common surname, we will identify them by their first names to avoid confusion.

jurisdictional authority. *See In re Southwestern Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000); *In re Dickason*, 987 S.W.2d 570, 571 (Tex. 1998). In fact, an order that exceeds a court's jurisdictional authority is void, and a relator who seeks mandamus relief from a void order need not show that he lacks an adequate appellate remedy. *See In re Southwestern Bell*, 35 S.W.3d at 605; *In re Dickason*, 987 S.W.2d at 571 (citing *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990) (explaining that judgment is void where rendering court had no jurisdiction or capacity to act as a court)).

To the extent that the parties' issues turn on the construction of a statute, we review these questions de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is to give effect to the Legislature's intent. *See id.* We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). "Where text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g) (citing *Shumake*, 199 S.W.3d at 284; *Alex Sheshunoff Mgmt. Servs. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006)). We consider the words in context, not in isolation. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *See Entergy Gulf States, Inc.*, 282 S.W.3d at 437; *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008); *see also* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage," but "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). We also presume that the Legislature was aware of the background law

and acted with reference to it. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). We further presume that the Legislature selected statutory words, phrases, and expressions deliberately and purposefully. *See Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010); *Shook v. Walden*, 304 S.W.3d 910, 917 (Tex. App.—Austin 2010, no pet.). Our analysis of the statutory text may also be informed by the presumptions that "the entire statute is intended to be effective" and that "a just and reasonable result is intended," Tex. Gov't Code Ann. § 311.021(2), (3) (West 2005), and consideration of such matters as "the object sought to be attained," "circumstances under which the statute was enacted," legislative history, "common law or former statutory provisions, including laws on the same or similar subjects," "consequences of a particular construction," and the enactment's "title," *id.* § 311.023(1)-(5), (7) (West 2005). However, only when the statutory text is ambiguous "do we 'resort to rules of construction or extrinsic aids.'" *Entergy Gulf States, Inc.*, 282 S.W.3d at 437 (quoting *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007)).

## ANALYSIS

Charles contends that section 109.001 of the family code provides the exclusive authority for the district court to issue temporary orders pending an appeal of a suit affecting the parent-child relationship, and that the district court's March 29 order in this case is void because the district court had already lost its jurisdiction to render such an order thirty days after Charles perfected his appeal on February 17. Melissa agrees that section 109.001 controls here, but insists that the district court's March 29 order was timely under section 109.001, and thus not void, for three reasons: (1) Charles's notice of appeal was "premature" because he filed it before his motion

4

for new trial was overruled; (2) Melissa was prejudiced when Charles did not serve a copy of the notice of appeal on Melissa's attorney until five days after he filed it with the district court, which, she reasons, entitles her to an additional five days under section 109.001 to obtain temporary orders; and (3) by including the additional fives days to which Melissa claims she is entitled, the district court's oral order granting the requested temporary orders pending appeal occurred within the thirty-day time limit.[3]

Chapter 109 of the family code governs the appeal of a final judgment in a suit affecting the parent-child relationship (SAPCR). *See* Tex. Fam. Code Ann. §§ 109.001–.003 (West 2008 & West Supp. 2011); *see generally id.* §§ 101.001–266.001 (West 2008 & West Supp. 2011) (Title F of family code, titled "The Parent-Child Relationship and the Suit Affecting the Parent-Child Relationship"). An appeal under this chapter generally follows the same path as other civil appeals—with the notable exception that appeals of termination cases are accelerated. *See id.* § 109.002(a). Thus, for example, once the appeal is perfected, the trial court loses its jurisdiction over the entire controversy, but it still retains plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment within thirty days after the judgment is signed or, if a motion for new trial is filed, within thirty days of that motion being overruled. *See Miles v. Ford Motor Co.*, 914 S.W.2d 135, 138 (Tex. 1995) (citing *Ammex Warehouse Co. v. Archer*, 381 S.W.2d 478 (holding that when appeal is perfected, appellate court "acquires plenary exclusive jurisdiction over the entire controversy" subject to trial court's right to grant a motion for new trial)); *see also* Tex. R.

---

[3] Melissa makes an additional argument regarding an alleged oral conversation between the parties' attorneys about Charles's notice of appeal. Because the conversation took place before Charles filed his notice and because he does not rely on this, we need not consider it.

Civ. P. 329b (providing rules regarding post-trial motions for new trial and motions to modify, correct, or reform judgments).

Family code section 109.001 provides an exception to this general rule by creating a narrow, jurisdictional window of time during which the trial court in an appealed SAPCR case may make temporary orders regarding matters that were not included in its final judgment:

> Not later than the 30th day after the date an appeal is perfected, on the motion of any party or on the court's own motion and after notice and hearing, the court may make any order necessary to preserve and protect the safety and welfare of the child during the pendency of the appeal as the court may deem necessary and equitable. In addition to other matters, an order may:
>
> (1)     appoint temporary conservators for the child and provide for possession of the child;
>
> (2)     require the temporary support of the child by a party;
>
> (3)     restrain a party from molesting or disturbing the peace of the child or another party;
>
> (4)     prohibit a person from removing the child beyond a geographical area identified by the court;
>
> (5)     require payment of reasonable attorney's fees and expenses; or
>
> (6)     suspend the operation of the order or judgment that is being appealed.

Tex. Fam. Code Ann. § 109.001(a); *see In re Boyd*, 34 S.W.3d 708, 710–11 (Tex. App.—Fort Worth 2000, no pet.) (holding that intent of similar provision in family code was to extend power of trial court to enter temporary orders after an appeal has been perfected); *see also* Tex. R. Civ. P. 308 (regarding trial court's continuing authority to enforce its judgments); *Arndt v. Farris*, 633 S.W.2d 497, 499 (Tex. 1982) (holding that trial court has inherent power to enforce its judgments).

Under the plain language of this statute, the trial court's authority to make such temporary orders is limited to thirty days after the appeal is perfected. *See* Tex. Fam. Code Ann. § 109.001(a). Stated another way, "the statute's language expressly states [that] the time within which the trial court must act is 'the 30th day after the date an appeal is perfected.'" *In re Boyd*, 34 S.W.2d at 711 (quoting Tex. Fam. Code Ann. § 6.709 (West 2006)).

An appeal of a civil case is perfected when a written notice of appeal is filed with the trial court clerk. *See* Tex. R. App. P. 25.1. Here, the parties agree that Charles filed his notice of appeal with the district court's clerk on February 17, 2012. The thirtieth day after February 17 fell on Sunday, March 18. Consequently, Monday, March 19, 2012, was the thirtieth day after Charles perfected his appeal under the rules. *See* Tex. R. App. P. 4.1 (computing time under rules of appellate procedure, day of event is not included, but last day is included unless it falls on a Saturday or Sunday, in which case period extends to the next day); Tex. R. Civ. P. 4 (same). Accordingly, the district court here had the jurisdiction to make temporary orders pending appeal through March 19, 2012. It is undisputed that the district court's order in this case was made after this date. Therefore, the district court lacked jurisdiction to issue the order and, as a result, the order is void. *See In re Southwestern Bell*, 35 S.W.3d at 605; *In re Dickason*, 987 S.W.2d at 571 (citing *Mapco, Inc.*, 795 S.W.2d at 703 (explaining that judgment is void where the rendering court had no jurisdiction to act)).

### *"Premature" notice of appeal*

Melissa contends that the district court's order was timely—i.e., that it was made within the jurisdictional time frame created by section 109.001(a)—because Charles's appeal was

perfected not on February 17, but ten days later on February 27, 2012, when his motion for new trial was overruled by operation of law. *See* Tex. R. Civ. P. 329b(c) (providing that motion for new trial is overruled by operation of law on expiration of seventy-five days after judgment signed). Specifically, she argues that under the rules of appellate procedure, Charles could not file a notice of appeal in this case until after his pending motion for new trial was overruled, either by the trial court or by operation of law. Because Charles filed it before then, she argues, his notice of appeal was premature and prematurely filed notices of appeal are deemed effective on the first date they would not have been premature, which she argues was February 27 when it was overruled by operation of law.

In support of her argument that Charles could not timely file his notice of appeal until after his motion for new trial was overruled, Melissa cites to *Trevino v. Pemberton*, 918 S.W.2d 102 (Tex. App.—Amarillo 1996, no writ). In *Trevino*, the Amarillo Court of Appeals interpreted the phrase "prematurely filed document" in rule 41(c) of the former rules of appellate procedure—the predecessor to current rule of appellate procedure 27.1, *see* Tex. R. App. P. 27.1 cmt.—to "encompass[] documents filed before the entry of a final judgment or order overruling a motion for new trial." *Trevino*, 918 S.W.2d at 105. *Trevino* held that because the document at issue there had been filed while a motion for new trial was pending, the document was prematurely filed and, as a result, its effective date was the day the motion for new trial was later overruled. *Id.* Melissa argues that this holding means that a notice of appeal is premature under rule of appellate procedure 27.1 if it is filed before a motion for new trial is overruled. We disagree.

8

First, *Trevino* was decided under former rules of appellate procedure that made perfecting an appeal considerably more complicated than it is under the current rules. *See* 49 Tex. B.J. 566 (1986) (setting forth former rules of appellate procedure, including former rule 40). For example, depending on the circumstances, an appellant under former rule 40 might have to file or make a bond, cash deposit, or an affidavit in lieu of cash deposit to perfect his appeal, *see id.* 41(a)(1), or if no security was required, simply file a notice of appeal, *see id.* 40(a)(2). In contrast, the plain language of rule of appellate procedure 25.1 simply requires an appellant to file a written notice of appeal with the trial court clerk to perfect his appeal. *See* Tex. R. App. P. 25.1. Second, in reaching its conclusion that "prematurely filed documents" are any documents filed before entry of final judgment or order overruling a motion for new trial, *Trevino* relied on a prior version of rule of civil procedure 306c that applied to motions for new trial, requests for findings of fact and conclusions of law, and notices of appeal, and that referenced both the date the judgment was signed and "the date of the overruling of motion for new trial, if such motion is filed" in determining appellate deadlines. *See* Tex. R. Civ. P. 306c cmt. (noting that 1986 amendment to rule 306c deleted reference to overruling of motion for new trial); *Trevino*, 918 S.W.2d at 105. But the current rule 306c, and in fact the version in effect when *Trevino* was decided, no longer applies to notices of appeal and further, simply provides that prematurely filed motions for new trial and requests for findings of fact and conclusions of law should be deemed filed—

> on the date of but subsequent to the time of signing of the judgment the motion assails, and every such request for findings of fact and conclusions of law shall be deemed to have been filed on the date of but subsequent to the time of the signing of the judgment.

9

Tex. R. Civ. P. 306c. We also note that the appellate document underlying *Trevino* was an affidavit of indigence, which is no longer required to perfect an appeal under rule 25.1. *See* Tex. R. App. P. 25.1. Accordingly, *Trevino* does not inform our decision here.

What does inform our decision here, however, are the current rules of appellate procedure, specifically rules 26.1 and 27.1. Rule 27.1 provides that "a prematurely filed notice of appeal is effective and deemed filed on the day of, but after, the event that begins the period for perfecting the appeal." *See* Tex. R. App. P. 27.1. And under rule 26.1, "the event that begins the period for perfecting the appeal" is the date the judgment is signed:

> The notice of appeal must be filed within 30 days *after the judgment is signed*, except as follows:
>
> (a) the notice of appeal must be filed within 90 days *after the judgment is signed* if any party timely files:
>
> > (1) a motion for new trial;
> > (2) a motion to modify the judgment;
> > (3) a motion to reinstate . . . ;
> > (4) a request for findings of facts and conclusions of law . . . .
>
> (b) in an accelerated appeal, the notice of appeal must be filed within 20 days *after the judgment or order is signed*;
>
> (c) in a restricted appeal, the notice of appeal must be filed within six months *after the judgment or order is signed*; and
>
> (d) if any party timely files a notice of appeal, another party may file a notice of appeal within the applicable period stated above or 14 days after the first filed notice of appeal, whichever is later.

*Id.* at 26.1 (emphases added). In other words, a notice of appeal is premature if it is filed before the judgment is signed. *See, e.g., Alvarado v. Lexington Ins. Co.*, — S.W.3d —,

10

Nos. 01–10–00740–CV, 01–10–01150–CV, 2012 WL 1355733, at *3 n.4 (Tex. App.—Houston [1st Dist.] Apr. 19, 2012, no pet. h.) (noting that notice of appeal was premature because it was filed before the trial court rendered a final judgment); *McAfee, Inc. v. Weiss*, 336 S.W.2d 840, 842 (Tex. App.—Dallas 2011, pet. denied) (holding that notice of appeal was premature because it was filed before final order). Nothing in the rules of appellate procedure suggests that a ruling on the motion for new trial is "the event that begins the period for perfecting the appeal."[4]

Here, the district court signed a final order disposing of the SAPCR on December 14, 2011, and Charles subsequently filed a motion for new trial. Therefore, under the plain language of rule of appellate procedure 26.1, Charles had to file his notice of appeal "*within* 90 days after the judgment [was] signed," Tex. R. App. P. 26.1(a)(1) (emphasis added)—i.e., by March 13, 2012. As stated, he filed his notice of appeal on February 17, which is within 90 days after December 14, 2011. Accordingly, Charles's notice of appeal was not premature.

Melissa suggests that our reading of section 109.001 and the rules of appellate procedure is "inefficient" because it could lead to a situation where the trial court is "forced" to rule on a motion for temporary orders pending appeal and then later negate the need for that order if it grants a motion for new trial. Initially, we note that this argument assumes, without foundation, that a temporary order issued to preserve and protect the safety and welfare of a child could somehow be later deemed unnecessary by the granting of a new trial. But even if this were true, nothing in the

---

[4] Of course, if the trial court modifies, corrects, or reforms the judgment, the appellate deadlines restart. *See* Tex. R. Civ. P. 329b(h); *Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 313 (Tex. 2000).

11

language of rule 25.1 suggests that an appeal cannot be perfected while a motion for new trial is pending, *see id.*, and further, rule of civil procedure 329b contemplates just such a scenario:

> If a motion for new trial is timely filed by any party, the trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment until thirty days after all such timely-filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first.

Tex. R. Civ. P. 329b(e). In short, we reject Melissa's arguments predicated on the notion that Charles's notice of appeal was "premature" in some relevant respect.

### *Late service*

Melissa also complains that she was prejudiced because Charles did not serve a copy of his notice of appeal on Melissa's attorney until February 22—five days after he filed it with the district court. *See* Tex. R. App. P. 9.5 ("At or before the time of a document's filing, the filing party must serve a copy on all parties to the proceeding."); 25.1(e) (requiring service of the notice of appeal to all parties to the trial court's final judgment). She suggests that this entitles the district court, on equitable grounds, to an additional five days in which to issue temporary orders under section 109.001(a), presumably making March 23, 2012, the last day on which the district court could have issued a temporary order under section 109.001. We disagree.

As discussed previously, section 109.001 provides a jurisdictional window that begins from the point an appeal is perfected. *See* Tex. Fam. Code Ann. § 109.001(a). Under the rules of appellate procedure, an appeal is perfected, not when it is served on the other parties, but rather "when a written notice of appeal is filed with the clerk." *See* Tex. R. App. P. 25.1(a). Although

12

late service of the notice may subject an appeal to dismissal under the rules, it does not under the plain language of the rules change the date on which the appeal was perfected. *See* Tex. R. App. P. 9.5(d), 25.1.

In any event, we do not see how Melissa was harmed by the five-day delay in notice here. Melissa argues that the very fact that she was shorted five days is harm, but the record shows that Melissa was able to file a motion and set a hearing during the thirty-day window. Although she subsequently passed that first setting for reasons that are not clear from the record, the fact remains that she received the notice of appeal in time for her to file a motion for temporary orders and set a hearing during the jurisdictional window created by section 109.001(a). In other words, the record shows that Melissa was not prevented from obtaining a ruling on her motion for temporary orders by the five-day delay in notice. *See Hare v. Hare*, 786 S.W.2d 747, 749 (Tex. App.—Houston [1st Dist.] 1990, no pet.) (holding that fifteen-day delay in notice of appeal prejudiced appellee because she was prevented from obtaining a ruling on her motion for temporary orders pending appeal).

### *Oral order*

In her final argument, Melissa argues that, even though the court did not sign its order granting her motion for temporary orders until March 29, 2012, the district court's order was nevertheless timely because the court rendered it orally at the end of the temporary-orders hearing on March 20, 2012. But even if we were to accept that an oral ruling on a motion for temporary orders trumps, for deadline purposes, a later signed order that memorializes the prior oral pronouncement, the district court's March 20 oral ruling was still outside the jurisdictional window

13

created by section 109.001. Again, as set forth above, the deadline for the trial court to make temporary orders under section 109.001(a) was March 19, 2012—i.e., thirty days after Charles filed his notice of appeal. Thus, whether on March 20 or March 29, the district court's order here was made outside the jurisdictional time frame created by section 109.001 and, as such, is void.

## CONCLUSION

Because more than thirty days passed after Charles perfected his appeal in this matter, the district court lacked jurisdiction to issue temporary orders pending appeal under section 109.001. Accordingly, the order that it signed on March 29, 2012, was void, and we therefore conditionally grant Charles's petition for writ of mandamus. The writ will issue only if the trial court fails to vacate its March 29, 2012 order awarding temporary attorney's fees during appeal.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose;
   Concurring Opinion by Chief Justice Jones

File: June 7, 2012

14