NO. 07-05-0233-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

DECEMBER 14, 2006

_____

KEVIN THOMAS STENSRUD and DAWN T. STENSRUD,

Appellants

v.

LEADING EDGE AVIATION SERVICES OF AMARILLO, INC.
and LEADING EDGE AVIATION SERVICES, INC.,

Appellees

_____

FROM THE 108th DISTRICT COURT OF POTTER COUNTY;

NO. 89,536-E; HON. ABE LOPEZ, PRESIDING

_____

*Opinion*

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Kevin Thomas Stensrud and his wife Dawn T. Stensrud (Stensrud) appeal from a take- nothing summary judgment entered in favor of appellees Leading Edge Aviation Services of Amarillo, Inc. and Leading Edge Aviation Services, Inc. (Leading Edge). Stensrud had brought a premises liability claim against Leading Edge for personal injuries allegedly sustained by Kevin at the facilities of Leading Edge in Amarillo. Kevin allegedly slipped in a puddle of oil left when a hydraulic hose on a "Manlift" machine broke. The

three issues before us involve a comment made by an individual on the premises concerning the cause of the puddle and the trial court's refusal to admit the statement. The latter purportedly would have shown that Leading Edge had knowledge of the hazardous condition. We affirm the judgment of the trial court.

*Background*

Leading Edge refurbishes aircraft at its facility in Amarillo. At the time of the incident, it was repainting an airplane owned by United Airlines. Kevin was employed by United Airlines to oversee the work being done, and while doing so, he allegedly slipped on the previously mentioned oil. In effort to establish that Leading Edge knew of the oil, he wanted to testify about a comment purportedly made by a Leading Edge employee involving the cause for the oil being on the floor. Via a motion for summary judgment and at trial, Leading Edge objected to the testimony as hearsay. Stensrud responded by arguing that the statement was admissible under Rule of Evidence 801(e)(2)(D) as a statement offered against a party and made by the party's servant and as a statement not offered to prove the truth of the matter asserted but to show notice or knowledge. The trial court sustained the objection. It then granted the pending motion for summary judgment on the basis that there was no evidence showing Leading Edge had actual or constructive knowledge of the alleged condition.

*Law and Its Application*

Given that the issues before us involve the admission of evidence, the applicable standard of review is one of abused discretion. *McKee v. McNeir,* 151 S.W.3d 268, 269 (Tex. App.–Amarillo 2004, no pet.). That is, before we can interfere with it, the appellant

2

must show that the decision failed to comport with applicable rules and guiding principles. *Trevino v. Pemberton*, 918 S.W.2d 102, 104 (Tex. App.–Amarillo 1996, no writ).

Next, Stensrud levies before us a two-fold attack against the trial court's decision. Both are founded upon the belief that the evidence in question was not hearsay. That the comment was not hearsay is based upon the contentions that 1) it was not offered to prove the truth of the matter asserted but rather to impute notice or knowledge to Leading Edge, *see* TEX. R. EVID. 801(d) (defining hearsay as a statement offered in evidence to prove the truth of the matter asserted), and 2) the comments were uttered by an employee of Leading Edge. *See id.* at 801(e)(2)(D) (stating that an utterance is not hearsay if offered against a party and is a statement by a party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship).[1] Given this, one can see that within each ground is the element of employment. In other words, to come within the parameters of 801(e)(2)(D), Stensrud must show that the individual uttering the comments was an employee of Leading Edge. So too must the same be shown to impute to Leading Edge whatever knowledge or notice the individual had of the spill. *See La Sara Grain Co. v. First Nat. Bank of Mercedes,* 673 S.W.2d 558, 563 (Tex. 1984) (holding that knowledge held by an agent or employee is imputed to the principal or employer). And, Stensrud concedes as much. The actual controversy before us entails the quantum of proof needed.

Leading Edge would have us hold that Stensrud must "clearly establish" that the individual was an employee before the trial court could admit the utterance. *See Tex.*

---

[1]Whether the statement concerned a matter within the scope of employment or during the existence of the employment relationship are not before us.

*General Indem. Co. v. Scott,* 152 Tex. 1, 253 S.W.2d 651, 655-56 (1952) (holding that the facts of agency must be clearly established); *American Maintenance & Rentals, Inc. v. Estrada,* 896 S.W.2d 212, 226 (Tex. App.–Houston [1st Dist.] 1995, vacated pursuant to settlement) (holding that the fact of agency must be clearly established); *Lord v. Insurance Co. of N.A.,* 513 S.W.2d 96, 101 (Tex. Civ. App.–Dallas 1974, writ ref'd n.r.e.) (holding same). On the other hand, Stensrud posits that he need only present some evidence of employment sufficient to raise a question of fact. Yet, irrespective of which standard is used, we conclude that Stensrud did not meet his burden.

An employer/employee relationship exists where one has the right to control the progress, details, and methods by which another performs his work. *Limestone Prods. Dist., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002). Such indicia as the independent nature of the worker's business, the worker's obligation to furnish necessary tools, supplies, and materials to perform the job, the worker's right to control the progress of the work, the time for which the worker is employed, and the method of payment shed light on the issue. *Id.* Yet, none of those indicia are addressed in the record before us.

Instead, the sum of the evidence purportedly illustrating the requisite relationship consists of 1) the contractual obligation of Leading Edge to paint the United airplane, 2) the facility at which the plane was being painted was a secure facility of the Amarillo International Airport, 3) people had to pass through security to enter the facility, 4) people in the facility were required to wear either temporary or permanent badges irrespective of who they worked for, 5) the badges were issued by Amarillo International Airport, not Leading Edge, 6) Kevin "believed" though he did not "recall exactly" that the individual to

4

whom he spoke had a "permanent" badge, 7) outside vendors and contractors worked with Leading Edge in general and specifically on the "Manlifts," 8) outside people could be in the hangar though "[n]ot near [his] airplane," 9) Leading Edge would "generally tell [him] that someone [*i.e.* an outside vendor] was going to be there," 10) nobody approached Kevin about outside vendors being on the premises the day he fell, 11) he never saw outside vendors come in "whose permission was not first sought by" Kevin, 12) most outside vendors wore uniforms and the individual Kevin spoke with did not, 13) the individual "had paint on his clothes like everyone else in the hangar," 14) the individual "looked like one of the Leading Edge painters," 15) the individual "went back to walk underneath the aircraft" after the conversation, 16) Kevin did not expect, nor was it customary for, anyone other than Leading Edge employees to be inside the hangar or around the aircraft, 17) the individual was "like the other people that were inside the hangar," 18) it was not "customary" for people who did not work for Leading Edge to be within the hangar, and 19) there was no indication that the individual was not an employee of Leading Edge. Noticeably absent from this litany is any evidence describing whether Leading Edge had any authority over the individual much less the right to control his actions. The independent nature of the individual's work, the identity of the person furnishing the tools to do the work, the right of the worker to control his actions, and the other indicia cited in *Limestone* remained undeveloped.

Nor is there evidence that Leading Edge was obligated only to use, or only used, its employees, as opposed to contractors, to paint the aircraft. Moreover, nothing suggests that one had to be an employee of Leading Edge to obtain a badge to enter the premises; indeed, Stensrud himself had a badge. And, that the individual had paint on himself and

5

sojourned within the hangar and around the aircraft does nothing to illuminate whether he was an employee of Leading Edge as opposed to some contractor the company may have retained. He could be either, and one inference is not more likely than the other given the scenario before us. *See Wal-Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 936 (Tex. 1998) (holding that if the evidence permits two equally plausible but opposing inferences then the evidence proves neither).

In sum, we hold that no evidence appears of record establishing that the person who spoke to Kevin was an employee or servant of Leading Edge. Thus, neither ground he proffered for securing admission of the comment is viable, and the trial court did not abuse its discretion in excluding the statement.

Accordingly, we overrule Stensrud's issues and affirm the judgment of the trial court.


Brian Quinn
Chief Justice